IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>      v.<br><br>ERIC YONG WOO,<br>a/k/a "Nan Li,"<br><br>      Defendant. | Case No. 1:19-CR-334<br><br>The Honorable Leonie M. Brinkema |

## GOVERNMENT'S EMERGENCY MOTION FOR A STAY OF MAGISTRATE JUDGE'S ORDER RELEASING DEFENDANT AND MOTION FOR DETENTION PENDING TRIAL

On September 24, 2020, a federal grand jury returned a 14-count superseding indictment in which the defendant, and his co-conspirators, was charged in Count 3 with conspiracy to launder money, in violation of 18 U.S.C. § 1956(h). Count 3 carries a maximum of 20 years in prison along with fines of up to $500,000 or twice the value of the funds involved in the offense. In the forfeiture provision of the superseding indictment, the government alleged the offenses involved at least $30,000,000.

On September 30, 2020, the defendant was arrested in Los Angeles, California. The defendant waived his identity hearing but requested a detention hearing, which was held on October 6, 2020, before the Honorable Alka Sagar, United States Magistrate Judge for the Central District of California. Judge Sagar found that the defendant was a flight risk and ordered his continued detention and transfer to the Eastern District of Virginia.

On January 11, 2021, the defendant arrived in the Eastern District of Virginia. He remained in the custody of the United States Marshals at the Northern Neck Regional Jail. On January 15, 2021, the defendant made his initial appearance, by video teleconference, before the Honorable

John Anderson, United States Magistrate Judge for the Eastern District of Virginia. At that hearing, Judge Anderson informed the parties that the defendant's arraignment had been set before the Court on January 19, 2021, at 10:30 a.m. On January 15, 2021, the defendant filed the instant motion appealing the Magistrate Judge's order of detention.

Comes now the United States' response in opposition. In support thereof, the government submits that defendant is not an appropriate candidate for pretrial release for several reasons, including: (1) the government's overwhelming evidence of the defendant's guilt for conspiring to launder money on behalf of international drug trafficking cartels; (2) evidence demonstrating that the defendant has access to fraudulent passports and identity documents; (3) the defendant's history of international travel to Mexico, Suriname, China, and elsewhere; (4) the defendant's ties to notorious Transnational Criminal Organizations; (5) the lack of a suitable third party custodian; and (6) the defendant's lack of ties to the Eastern District of Virginia. Under these circumstances, the defendant is a danger to the community and a flight risk.

## LEGAL STANDARD

Pursuant to 18 U.S.C. § 3145(b), a person ordered detained by a magistrate judge may file a motion with the court having original jurisdiction over the matter requesting revocation or amendment of the order.[1] The district court's review of the magistrate judge's order of detention is *de novo*, *United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir. 1989) For the reasons set forth in more detail below, the government urges this Court to deny the defendant's requested relief.

---

[1] The defendant has not requested the transcript from his detention hearing in the Central District of California. That record remains under seal, but the government has requested that the U.S. Attorney's Office for the Central District of California move to unseal the case. Given the timing of this motion, the government was not able to obtain the transcript in anticipation of the January 19, 2021 arraignment. If the Court withholds its ruling on this matter beyond the scheduled arraignment, the government requests sufficient time to obtain the transcript to aid in the Court's review of the Magistrate Judge's detention order.

**ARGUMENT**

1. *The § 3142(g) Factors Weigh In Favor of Detention*

A court must consider several factors when determining whether pretrial detention is appropriate, including (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the seriousness of the danger to the community posed by the defendant's release. 18 U.S.C. § 3142(g). Here, each of these factors weighs in favor of detention.

    a. *The Defendant Conspired to Launder Money for Foreign Drug Trafficking Organizations*

The government's evidence against the defendant is overwhelming. It includes testimony from multiple cooperators about the defendant's money laundering activities, corroborating business and travel records, and seized electronic communications showing the defendant's personal connection with additional unindicted money launderers. Many of these communications were discovered following the execution of a search warrant on the defendant's electronic devices, which were seized at the U.S-Mexico border during one of his many crossings between the United States from Mexico. Although the defendant is not charged with a controlled substance offense such that the presumption under 18 U.S.C. § 3142(e)(2) applies, the evidence will thoroughly prove the money involved in this scheme came from drug trafficking.

    b. *The Weight of the Evidence Against the Defendant is Strong*

A cooperating witness will testify that in March 2016 he/she and the defendant flew from Los Angeles to Chicago, Illinois, to retrieve approximately $300,000 of drug proceeds. Once they retrieved the money, they immediately drove back to California—the same day they arrived in Chicago. This witness will testify that he/she and the defendant were both aware the money came from an illegal source. The government will corroborate aspects of this testimony through several

business records. This witness will also testify that he/she paid the defendant for his participation in the activity and that the defendant delivered the money to other co-conspirators who deposited it into multiple bank accounts.[2]

Additionally, and as alleged in the superseding indictment, this conspiracy used false travel and identity documents to further the money-laundering schemes. To that end, the witness referenced above will also testify that he/she and the defendant traveled to Suriname in 2017 to obtain fraudulent passports from defendant Xizhi Li's contacts in that country. The government will corroborate this testimony through a second cooperating witness and travel records. Furthermore, the government will show the defendant wrote a check for $37,500 to defendant Xizhi Li's BBVA Compass account—an account Li held in the fictitious "Francisco Ley Tan" identity—in Miami, Florida, around the time of the travel.[3] This check came from a CitiBank account belonging to "Lu Trading." Records from CitiBank will further show that the defendant is the only authorized signatory for the account. This check is believed to be payment to obtain at least one Suriname passport through fraudulent means or as compensation for arranging the trip.

   c. *The Defendant has a record of extensive international travel and possesses fraudulent passports.*

In addition to Suriname, the defendant has extensive travel to China and Mexico. Indeed, the defendant had dozens of border crossings in the year prior to his arrest. Moreover, a search of the defendant's electronic devices revealed that he had a template for a Chinese passport that

---

[2] The investigation revealed that after bulk cash from drug sales was picked up in the United States it was frequently deposited into multiple bank accounts. The money was then transferred to other bank accounts as part of a complex "black market peso exchange" scheme involving China and Mexico. At the end of the scheme, the drug traffickers, often in Mexico, were repaid in the currency of their home country, e.g. pesos in Mexico.

[3] This account was opened with a Guatemalan passport that Li obtained through fraud in Guatemala.

displayed a photograph of the defendant and the name "Nan Li." In light of the defendant's use of fraudulent identities, and attempts to obtain fraudulent travel documents, this Court can take no solace from forcing him to surrender his United States passport, as he could easily obtain the means to travel under an assumed identity.

    d. *There is No Suitable Third Party Custodian*

The defendant submits his parents as third-party custodians. But by his own admission they are in their seventies, they do not speak English, and they rely on the defendant to aid in the conduct of their lives. This Court cannot trust them to supervise the defendant and ensure he does not flee the United States.

    e. *The Defendant has No Ties to the Eastern District of Virginia*

The government submits that it is unreasonable to believe the defendant can be effectively supervised in Los Angeles because that is where he committed a substantial portion of the conduct the government intends to prove at trial. Additionally, it would be relatively easy for the defendant to cross into Mexico from Southern California if this Court allows him to return to Los Angeles. Moreover, there is no evidence that the defendant has other potential custodians with ties to the Eastern District of Virginia such that this Court could permit his release pending trial with the special condition that he remain in this district.

2. *The Risk Associated with Covid-19 Does Not Favor Release*

The defendant argues that the ongoing pandemic favors his release pending trial. In support, he points to the recent outbreaks at the jail in Los Angeles, the Alexandria Detention Center, and the general Covid-19 conditions in other Northern Virginia jails. However, he does not discuss the conditions at the Northern Neck Regional Jail (NNRJ), where he is currently housed.

According to the NNRJ, as of January 4, 2021, that facility had 41 active positive cases, and 160 total positive cases since the beginning of the pandemic. The jail expected its current cases to diminish by January 11, 2021. Among its positive cases, the overwhelming majority reported mild or no symptoms. Only one reported moderate symptoms—i.e. those beyond a common cold. No inmates have experienced severe symptoms. To guard against future outbreaks, the jail has taken several steps including, but not limited to, distributing personal protective equipment (N95 and KN95 masks) to all staff and inmates, increased social distancing protocols, and purchased brand new Bi-Polar Ionization Filters for all heating and air conditioning ducts. These filters have a 98% "kill-ratio" for airborne viruses, such as Covid-19. While by no means a guarantee against infection, these measures are important safeguards that will protect inmates such as the defendant. It is also noteworthy that the defendant has already recovered from the virus. According to the Center for Disease Control, studies indicate that the vast majority of people who recover from Covid-19 produce antibodies that help fight off future infections. *See* https://www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html (last visited January 16, 2021).

Finally, the defendant cannot show that he will be safer in Los Angeles, where his proposed third party custodians reside. As of January 16, 2021, Los Angeles County became the first county in the United States to record one million cases of infected residents, https://www.nbcnews.com/news/us-news/los-angeles-becomes-first-county-hit-1-million-covid-19-n1254498 (last visited January 16, 2021), and has been described as the nation's largest Covid-19 "hot spot." https://www.nbcnews.com/news/us-news/1-person-dies-every-6-minutes-how-l-became-nation-n1254003 (last visited January 16, 2021). As of January 15, 2021, there were 7,715 Covid-19 hospitalizations in Los Angeles County.

http://publichealth.lacounty.gov/media/coronavirus/data/index.htm# (last visited January 16, 2021). Thus, if the defendant were released into the custody of his proposed custodians and contract the virus (again), it is questionable he would be able to receive higher care if he were to experience severe symptoms.

Given all this, there is no basis for this Court to conclude that the risks associated with Covid-19 counsel in favor of the defendant's release.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court DENY the defendant's appeal of the Magistrate Judge's order and order his continued detention pending trial.

Respectfully submitted,

Raj Parekh
Acting United States Attorney


By: _____/s/_____
David A. Peters
Assistant United States Attorneys
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3700
David.peters@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 18, 2020, I filed the foregoing with the Clerk through CM/ECF and provided an electronic copy to Patrick Mullin, Esq., counsel for the defendant.

Respectfully submitted,

Raj Parekh
Acting United States Attorney

By:  _____/s/_____
David A. Peters
Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3700
David.peters@usdoj.gov